UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| KEVIN CURRY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:06-CV-127 RM |
| | ) | |
| KEYSTONE RV COMPANY, | ) | |
| | ) | |
| Defendant | ) | |

OPINION and ORDER

On February 16, 2006, Kevin Curry filed a complaint against the Keystone RV Company alleging that while employed at Keystone he was subjected to racial discrimination, harassment, and retaliation. Mr. Curry contends that Keystone's conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. Keystone has moved for summary judgment, and Mr. Curry hasn't filed a response. For the following reasons, this court grants Keystone's motion.

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). There is no genuine issue of material fact when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in its favor. Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

> Moreover:
>
> the plain language of Fed. R. Civ. P. 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the

> nonmoving party has failed to make a sufficient showing on an essential element with respect to which she has the burden of proof.

Celotex v. Catrett, 477 U.S. 317, 322-323 (1986). Mr. Curry represents himself, but the standard for reviewing a summary judgment motion is the same regardless of whether a party was represented by counsel. Outlaw v. Newkirk, 259 F.3d 833, 836-837 (7th Cir. 2001).

Because the facts set out by Keystone in its summary judgment motion are uncontroverted by a response, they are assumed to be true. N.D. IND. R. 56.1(b); *see also* Flynn v. Sandahl, 58 F.3d 283, 288 (7th Cir. 1995) ("the ... effect of a non-movant's failure to respond to a motion for summary judgment is that it constitutes an admission by the non-movant that there are no disputed issues of genuine fact."). Mr. Curry's lack of response doesn't automatically render summary judgment appropriate. FED. R. CIV. P. 56(e). Keystone must still show itself to be entitled to judgment under the law, and for the reasons that follow, the court finds it has done so.

The uncontroverted facts of this case are as follows. Mr. Curry, an African American, was employed by Keystone from August 19, 2004 through March 17, 2005 as a welder and production employee. After Mr. Curry had worked at Keystone for a month, he was transferred from the welding department to the countertop department due to unacceptable speed and quality issues. Mr. Curry was later transferred to the

lamination/routing department because of a lack of work in the countertop department. After one week in lamination/routing, Mr. Curry asked for responsibility that did not require constant routing. He was given the primary responsibility of assisting operators by cleaning up scrap.

On October 26, 2004, Mr. Curry notified management of an altercation that occurred between him and his Caucasian coworker Mr. Hahn. Mr. Curry alleged that Mr. Hahn threatened him physically by pointing a router at his head and threatening to throw it at him. Mr. Curry said he was genuinely afraid that Mr. Hahn was going to harm him. Mr. Julian, director of human resources, and Ms. Spratt, vice president of quality control and support services, investigated the matter. Mr. Julian and Ms. Spatt concluded that Mr. Hahn had reacted inappropriately when Mr. Curry, trying to pull excess scrap from beneath Mr. Hahn, inadvertently caught the power cord to his router causing the router to almost strike Mr. Hahn in the leg. This wasn't the first time this had happened, and Mr. Hahn reported that he had warned Mr. Curry before to slow down because somebody could get seriously hurt. Mr. Hahn previously had injured his leg with a router and reacted with that on his mind. As a result of this incident, Mr. Hahn was disciplined by management the same day they were notified. Mr. Curry received

counseling from Mr. Mishler, department manager, on the importance of performing job duties with safety in mind.

The next day, Ms. Spratt and Mr. Julian met with Mr. Curry to discuss his further concerns. During that meeting, Mr. Curry said he wasn't comfortable working in the lamination/routing department any more and wanted to be transferred back to welding. Although it wasn't Keystone's normal practice to grant a job transfer based on an employee request, Ms. Spratt told Mr. Curry she would speak to the welding group leader, Mr. Smith. Mr. Smith told Ms. Spratt that though there was a welding position open, he had some concerns about Mr. Curry's previous welding performance. However, Mr. Smith offered to give Mr. Curry a chance and Mr. Curry started in the welding department that same day.

Despite Mr. Curry's second chance, problems continued. On October 29, Mr. Curry received a written warning because of unsatisfactory performance. Mr. Curry didn't report for work on January 17 and received a written warning for an unexcused absence. A week later, Mr. Julian received a written complaint by Mr. Curry about this written warning. While Mr. Curry missed only one day, it is Keystone's practice that even one absence can lead to disciplinary action. On March 3, Mr. Curry received a warning from the quality inspector and welding department group leader because of the poor quality of his welding of roof rafters on which the welds were not holding. Finally, on March 16,

after his welds on the floors of recreational vehicles failed, he received his third warning about his substandard performance, which, consistent with Keystone's policy, resulted in the termination of Mr. Curry's employment the following day.

Mr. Curry filed a complaint with the EEOC. Upon receipt of the complaint, Mr. Julian and Ms. Spratt learned for the first time of Mr. Curry's allegation that one of his coworkers said in response to the Martin Luther King Day holiday, "we don't get KKK day off." Mr. Julian and Ms. Spratt launched an immediate investigation into the incident. It was discovered that Mr. Curry's coworker, Mr. Dryer, made the comment outside the plant at the lunch truck on the day Mr. Curry was not at work. Mr. Dryer's employment already had been terminated for other reasons before Mr. Curry filed his EEOC charge.

Mr. Curry received a notice of right to sue from the EEOC and then filed his complaint with this court. The complaint alleges racial discrimination, racial harassment, and retaliation in violation of 42 U.S.C. §2000e *et seq.*

Mr. Curry claims that after reporting the incident with Mr. Hahn to Keystone management, he was transferred out of the welding department and eventually fired. Mr. Curry feels that he was singled out and disciplined by the company because similarly situated Caucasian employees weren't disciplined when they engaged in similar behavior.

6

Title VII of the Civil Rights Act of 1964 states that it "shall be an unlawful employment practice for an employer…to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prevail on a racial discrimination claim, a plaintiff must show either direct evidence of discriminatory motive or intent or rely on the indirect burden-shifting method outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). "Direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus," Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000), or the plaintiff's "constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker'." Rhodes v. Illinois Dept. Of Transp., 359 F.3d 498, 504 (7th Cir. 2004) (*quoting* Troupe v. May Dept. Stores Co., 20 F.3d 734, 737 (7th Cir. 1994)). The circumstantial evidence cited "must point directly to a discriminatory reason for the employer's action." Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 939 (7th Cir. 2003). Mr. Curry's complaint points to no direct evidence of racial discrimination. The incident described by Mr. Curry doesn't created a "convincing mosaic" of circumstantial evidence of discriminatory intent on the part of Keystone's decisionmakers.

7

Mr. Curry, then, must establish discrimination using the indirect method of proof established by McDonnell Douglas. To establish a *prima face* case under this framework, he must show that "he is a member of a protected class, that he suffered an adverse employment action, that he was meeting his employer's legitimate performance expectations, and that his employer treated similarly situated employees who were not in the protected class more favorably." Stalter v. Wal-Mart Stores, Inc., 195 F.3d 285, 289 (7th Cir. 1999).

Although Mr. Curry has shown that he is a member of a protected class and that he suffered an adverse employment action, he hasn't fulfilled the other two elements. Keystone has pointed to several incidents when Mr. Curry was not meeting its performance expectations. Mr. Curry received three warnings for unsatisfactory performance in the five months leading up to his termination. During that time, Mr. Curry also received a written warning for an unexcused absence. Satisfactory performance in the welding department was critical, according to Keystone, since the failure of any weld in a recreational vehicle can be dangerous, especially the welds in the floor of the unit. His termination came a day after his third performance related warning.

Mr. Curry also hasn't presented any evidence that employees outside the protected class were treated more favorably. Mr. Curry's complaint states that when similarly situated white employees engaged in

8

similar behavior, they were not disciplined, but Mr. Curry hasn't named any individual or described any similar circumstances when that person was treated more favorably. Keystone is entitled to summary judgment on Mr. Curry's racial discrimination claim.

Keystone also is entitled to summary judgment on Mr. Curry's claim of harassment under Title VII. To succeed on a racial harassment claim, the plaintiff must show that: (1) he was subject to unwelcome harassment, (2) the harassment was based on his race, (3) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive working environment that seriously affected his psychological well-being, and (4) there is a basis for employer liability. Hrobowski v. Worthington Steel Co., 358 F.3d 473, 476 (7th Cir. 2004). Mr. Curry also must show that his work environment was both subjectively and objectively offensive. Herron v. DaimlerChrysler Corp, 388 F.3d 293, 302 (7th Cir. 2004). An objectively hostile work environment "is one that a reasonable person would find hostile or abusive." McPhaul v. Board of Com'rs of Madison County, 226 F.3d 558, 567 (7th Cir. 2000). In determining whether a plaintiff has met this standard the court should consider all the circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).

In his complaint, Mr. Curry cited two instances in which he felt harassed: on one occasion a white welder threatened to throw a router in his face, and the other occasion involved a coworker remarking that "we don't get KKK Day off." Mr. Curry hasn't linked the first incident to race. Keystone's uncontroverted statement of material facts relates that Mr. Hahn felt that Mr. Curry wasn't being careful enough while performing his duties. After Mr. Curry almost caused a router to strike Mr. Hahn's leg, Mr. Hahn verbally threatened him.

Mr. Curry cannot establish that *he* was subjected to unwelcome harassment in the second incident. Keystone stated in its material facts section that Mr. Curry wasn't working when the racist remark was made by his coworker. "When such harassment is directed at someone other than the plaintiff, the impact of such second hand harassment is obviously not as great as the impact of harassment directed at the plaintiff." McPhaul, 226 F.3d at 567 (internal citations omitted).

Also, Mr. Curry hasn't shown a basis for employer liability for either incident. Employers may be liable for harassment of a coworker when "they have been negligent either in discovering or remedying the harassment. An employer satisfies its legal duty in coworker harassment cases if it takes reasonable steps to discover and rectify acts of

harassment of its employees." Cerros v. Steel Technologis, Inc., 398 F.3d 944, 952 (7th Cir. 2005) (internal citations omitted). The day Keystone management was alerted to the altercation between Mr. Curry and Mr. Hahn it investigated the incident, disciplined Mr. Hahn, and counseled Mr. Curry on work place safety. The next day, when Mr. Curry stated he no longer wanted to work in the same department as Mr. Hahn, Keystone management granted Mr. Curry's transfer to the welding department. Keystone was only made aware of the second incident after Mr. Curry filed his EEOC claim, but management immediately investigated the incident and determined that the person responsible had already been terminated.

Mr. Curry claims that he was retaliated against by being transferred to another department and disciplined after he engaged in the protected act of writing a complaint about a Caucasian welder (Mr. Hahn) threatening him with violence. To succeed on a retaliation claim under Title VII, Mr. Curry must show that: 1) he engaged in a statutorily protected activity; 2) he suffered an adverse employment action; and 3) there is a causal link between the two. Herron v. DaimlerChrysler Corp., 388 F.3d at 301. Even if Mr. Curry engaged in a protected activity, he can't show he suffered an adverse employment action. Keystone's statement of facts reveals that after Mr. Curry complained about Mr. Hahn's threat, Mr. Hahn was disciplined. Mr. Curry only received

counseling on the importance of job safety, and received his requested transfer out of lamination/routing and into the welding department. The transfer was requested, not forced upon him. This transfer was also to a department at the same location, with no increased travel time, no increased hardship, and for the same pay and benefits. Transfers without reductions in pay or status amount to a minor annoyance. Herron v. DaimlerChrysler Corp., 388 F.3d at 301.

For the foregoing reasons, the court GRANTS Keystone's motion for summary judgment [Doc. No. 34].

SO ORDERED.

ENTERED:  January 11, 2008

      /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court